Jack Silver, Esq. SB #160575
E-mail:lhm28843@sbcglobal.net
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.(707) 528-8175
Fax.(707) 528-8675

David J. Weinsoff, Esq. SB# 141372
Email: david@weinsofflaw.com
Law Office of David J. Weinsoff
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760
Fax. (415) 460-9762

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit Corporation,<br><br>Plaintiff,<br>v.<br>CITY OF WHITTIER,<br>Defendant. | Case No.: 2:15-cv-06392<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br><br>(Environmental - Clean Water Act 33 U.S.C. § 1251, *et seq*.) |

NOW COMES Plaintiff, CALIFORNIA RIVER WATCH ("RIVER WATCH"), by and through its attorneys, and for its Complaint against Defendant CITY OF WHITTIER ("WHITTIER") states as follows:

**I.     NATURE OF THE CASE**

1.     This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA" or "Act") 33 U.S.C. §1251 et seq., specifically the citizen's suit provision set forth in CWA §505, 33 U.S.C. §1365 to enforce CWA §301, 33 U.S.C. §1311 and CWA §402, 33 U.S.C. §1342 in order to prevent WHITTIER from repeated and ongoing violations of the CWA. These violations are detailed in the Notice of Violations and Intent to File Suit ("CWA

NOTICE") dated June 8, 2015 made part of this pleading and attached hereto as **EXHIBIT A.**

2. RIVER WATCH alleges WHITTIER is routinely violating the CWA by being in violation of "an effluent standard or limitation under this Act" by discharging a pollutant from a point source to a water of the United States without complying with any other sections of the Act including CWA §402, 33 U.S.C. §1342.

3. Under CWA §101(e), 33 U.S.C. §1251(e) Congress declared its goals and policies with regard to public participation in the enforcement of the CWA. CWA §101(e), 33 U.S.C. §1251(e) provides, in pertinent part:

> Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States.

The Supreme Court noted in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), that the plaintiff is often Congress' "chosen instrument" to vindicate important federal policy. *Id.* at 421.

4. RIVER WATCH alleges WHITTIER illegally discharges pollutants to waters of the United States which are habitat for threatened or endangered species as that term is defined by the California Environmental Protection Agency ("EPA") and the United States EPA.

5. RIVER WATCH seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for WHITTIER's violations of the CWA as alleged in this Complaint.

**II.   PARTIES TO THE ACTION**

6. RIVER WATCH is an IRC § 501(c)(3) non-profit, public benefit Corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and offices in Los Angeles, California. The mailing address of River Watch's northern California office is 290 S. Main Street, #817, Sebastopol, CA 95472. The mailing address of River Watch's southern California office is 7401

Crenshaw Blvd. #422, Los Angeles, CA 90043. RIVER WATCH is dedicated to protecting, enhancing, and helping to restore surface and ground waters of California including its oceans, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.

7. Some members of RIVER WATCH live nearby WHITTIER; others frequent WHITTIER and its environs. Some members of RIVER WATCH visit family members residing near WHITTIER. Said members have interests in the watersheds identified in this Complaint, which interests have, are, and will be adversely affected by WHITTIER's violations of the CWA as alleged herein. Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks, and the like.

8. RIVER WATCH is informed and believes and on such information and belief alleges that DEFENDANT CITY OF WHITTIER is a Municipality formed under the laws of the State of California, with administrative offices located at 13230 Penn Street, Whittier, California.

**III.   JURISDICTIONAL ALLEGATIONS**

9. Subject matter jurisdiction is conferred upon this Court by CWA §505(a)(1), 33 U.S.C. §1365(a)(1), which states in part that, "any citizen may commence a civil action on his own behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." For purposes of CWA §505(a)(1), 33 U.S.C. §1365(a)(1) the term "citizen" means, "a person or persons having an interest which is or may be adversely affected."

10. Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from, own property near, visit and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the waterways and associated natural resources into which WHITTIER discharges pollutants, or by which WHITTIER's operations adversely affect

said members' interests, in violation of the CWA §§301(a) and 402, 33 U.S.C.§§ 1311(a) and 1342. The health, economic, recreational, aesthetic or environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by WHITTIER's unlawful violations as alleged herein. RIVER WATCH and its members contend there exists an injury in fact to them, causation of that injury by WHITTIER's complained of conduct, and a likelihood that the requested relief will redress that injury, and the likelihood of future injury and interference with the interests of said members.

11. Pursuant to CWA §505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A) notice of the CWA violations alleged in this Complaint was given more than sixty (60) days prior to commencement of this lawsuit, to: (a) WHITTIER, (b) the United States EPA, Federal and Regional, and (c) the State of California Water Resources Control Board.

12. Pursuant to CWA §505(c)(3), 33 U.S.C. §1365(c)(3) a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

13. Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1) venue lies in this District as the wastewater collection facilities under WHITTIER's operation and/or control which facilities are the subject of this action, and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

**IV. GENERAL ALLEGATIONS**

14. RIVER WATCH incorporates by reference all the foregoing including EXHIBIT A as though the same were separately set forth herein. RIVER WATCH takes this action to ensure compliance with the CWA which regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception authorizes a discharger, who has been issued a permit pursuant to CWA §402, 33 U.S.C. §1342, to discharge designated pollutants at certain levels subject to certain conditions.

The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the CWA §301(a), 33 U.S.C. §1311(a) prohibition, such that violation of a permit limit places a discharger in violation of the CWA.

15. The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* CWA §402(b), 33 U.S.C. §1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board ("SWRCB") and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating WHITTIER's operations in the region at issue in this Complaint is the Regional Water Quality Control Board, Los Angeles Region ("RWQCB-LA").

16. While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of permitting requirements under the statute relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA §505, 33 U.S.C. §1365). RIVER WATCH is exercising such citizen enforcement to enforce compliance by WHITTIER with the CWA.

17. RIVER WATCH has identified discharges of sewage from WHITTIER's sewage collection system to waters of the United States in violation of CWA §301(a), 33 U.S.C. §1311(a) which states in relevant part, "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

18. RIVER WATCH contends that for the period June 1, 2010 to August 20, 2015 WHITTIER has violated the Act as described herein by discharging pollutants from a point source to a water of the United States without complying with other enumerated

sections of the Act. RIVER WATCH contends these violations are continuing in nature and have a likelihood of occurring in the future.

19. Sanitary sewer overflows ("SSOs") during which untreated sewage is discharged from WHITTIER's collection system prior to reaching the Los Coyotes Water Reclamation Plant, are alleged to have occurred both on the dates identified in the California Integrated Water Quality System ("CIWQS") web based reporting Interactive Public SSO Reports (136 separate violations) and on dates when no reports were filed by WHITTIER, all in violation of the MS4 NPDES Permit and the CWA.

20. All discharges identified by WHITTIER under oath in its submittals to CIWQS Public SSO Reports in which WHITTIER reported the discharge reached a surface water, or the discharge entered a conveyance, such as the storm drain that leads to a water of the United States but was not fully recovered, are violations of CWA §301(a), 33 U.S.C. §1311(a).

21. WHITTIER's aging collection system has historically experienced high inflow and infiltration ("I/I") during wet weather. Structural defects which allow I/I into the sewer lines result in a buildup of pressure causing SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains connected to adjacent surface waters including Coyote Creek, Leffingwell Creek, La Mirada Creek, and the San Gabriel River, all waters of the United States.

22. As recorded in CIWQS Public SSO Reports, WHITTIER has reported 248 SSOs. Thirty-seven percent of those SSOs were reported to have reached surface waters. In the last 12 months WHITTIER has reported 48 SSOs – 35 of which were reported as reaching surface waters.

23. RIVER WATCH contends that many of the SSOs reported by WHITTIER as having been contained without reaching a surface water did in fact discharge to surface waters, and those reported as partially reaching surface water did so in greater volume than stated. The claim of full containment is further called into question by the fact that many of WHITTIER's SSO Reports state the estimated start time of the SSO as the time

Complaint

when the reporting party first noticed the SSO. Studies have shown that most SSOs are noticed significantly after they have begun. WHITTIER reports that some of the discharges reach a storm drain, but fails to determine the accurate amounts which reach a surface water.

24. Since the volume of SSOs of any significance is estimated by multiplying the estimated flow rate by the duration, the practice of estimating a later than actual start time leads to an underestimation of both the duration and the volume. In an identified spill of 1,500 gallons on June 7, 2014 (CIWQS Event ID #806906) WHITTIER's SSO report lists the estimated spill start time as 10:00, and the agency notification time as 7 minutes before the spill start time – 09:53. The operator arrival time is reported as 10:00, and the spill end time as 10:15  For CIWQS Event ID #811286, a December 6, 2014 spill of 2,750 gallons, the estimated spill start time is reported as 9:45, the same as the agency notification time. The operator arrival time is listed as 10:30, and the spill end time just 10 minutes later, at 10:40. Many of WHITTIER's SSO reports list the same times for spill start and agency notification, and very short intervals, often less than 10 minutes, between operator arrival time and spill end time. It is highly unlikely these times are accurate. RIVER WATCH contends that WHITTIER is grossly underestimating the incidence and volume of SSOs that reach surface waters.

25. RIVER WATCH contends WHITTIER also fails to adequately mitigate the impacts of SSOs. WHITTIER is a permittee under the Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements Order No. 2006-003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems. The Statewide WDR mandates that the permittee shall take all feasible steps to contain and mitigate the impacts of a SSO. The EPA's "*Report to Congress on the Impacts of SSOs*" identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. Numerous critical habitat areas exist within the areas of WHITTIER's SSOs. There is no record of WHITTIER performing any analysis of the impact of SSOs on critical habitat of protected species under the ESA, nor any record of evaluations of the measures

needed to restore water bodies designated as critical habitat from the impacts of SSOs.

26. The Statewide WDR requires WHITTIER to take all feasible steps and to perform necessary remedial actions following the occurrence of a SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site. One of the most important remedial measures is the performance of adequate sampling to determine the nature and the impact of the release. As WHITTIER is severely underestimating SSOs which reach surface waters, WHITTIER is also not conducting sampling on most SSOs.

27. The San Gabriel River and its tributaries have many beneficial uses as defined in the RWQCB-LA's Basin Plan. WHITTIER's SSOs reaching the San Gabriel River or its tributaries cause prohibited pollution by unreasonably affecting the beneficial uses of these waters.

28. WHITTIER owns 1,290 acres within the Puente Hills Landfill Native Habitat Preservation, currently within a proposed Los Angeles County Significant Ecological Area. It is WHITTIER's responsibility to oversee and preserve biological diversity within its jurisdiction. Insufficient studies exist regarding the impact of WHITTIER's SSOs on this habitat. Some of the species within the Preservation include the endangered California gnatcatcher, deer, bobcats, grey fox, and many flora such as the Coastal Sage Scrub. RIVER WATCH is understandably concerned regarding the effects of both surface and underground SSOs on critical habitat in and around tributary waters of the San Gabriel River which runs to the Pacific Ocean.

29. The location or locations of the various violations are identified in records created and/or maintained by or for WHITTIER which relate to its sewage collection system as further described in this Complaint.

30. WHITTIER is located in Los Angeles County, about 20 miles northwest of Anaheim and about 12 miles southeast of Los Angeles. WHITTIER encompasses

approximately 14.7 square miles and has a population estimated at 83,680 based on a 2010 census.

31. The primary land use in WHITTIER's sewer service area is residential with local and regional commercial centers located on Whittier Boulevard. WHITTIER is home to Whittier College and the Southern California University of Health Sciences, as well as a variety of tourist-related landmarks such as The Governor Pio Pico Historical State Park, El Camino Real, Mt. Olive, Broadway Cemeteries, and the Whittier Historical Society Museum. Other attractions and recreational parks include Sycamore Park, Hellman Wilderness Park, and Arroyo Pescadero Trail, all tributaries of Turnbull Canyon, and the previously identified Puente Hills Landfill Native Habitat Preservation. Public facilities within the city limits include the Friendly Hills Country Club, 3 public libraries, 4 fire department stations, Whittier Station Shopping Center, Village Square Shopping Center, The Quad at Whittier Shopping Center, Model Plaza Shopping Center, AMF Friendly Hills Lanes, and 9 hotels and motels. Coyote Creek, Bacon Arroyo San Miguel, Arroyo Salinas, Arroyo Pescadero, Arroyo Jalisco, Worsham Creek, Tacobi Creek, Savage Creek, and La Mirada Creek are all located within WHITTIER's jurisdiction. WHITTIER is home to 19 parks including the Memorial Stadium, Broadway Park, Central Park, Friends Park, Jackson Park, Kennedy Park, Michigan Park, Palm Park, and William Penn Park. The acreage of the Puente Hills Landfill Native Habitat Preservation owned by WHITTIER extends to La Habra Heights and through the unincorporated communities of Rowland Heights and Hacienda Heights.

32. WHITTIER's collection system consists of approximately 194 miles of sewer mains, including 6.4 miles along State Highway 72, and 5,028 manholes which rely solely on WHITTIER's gravity sewer system. The system has no lift stations or force mains. WHITTIER's Street Division is responsible for the maintenance and repair of all sewer mains. Nearly 7 miles of private sewer mains and 14 miles of Los Angeles County Sanitation District ("LACSD") trunk sewers within WHITTIER are not owned nor maintained by WHITTIER. Sewer mains range in size from 4 to 15 inches in diameter.

1  Some sewer lines date back as far as 1917, and most were installed between 1950 and 1960. WHITTIER's main lines consist of primarily vitrified clay pipe which are adjacent to mature trees with deep roots – a major cause of SSO's.

33. On or about July 31, 2007, WHITTIER entered into an agreement with the Los Angeles County Consolidated Sewer Maintenance District to allow raw sewage generated from the Senior/Community Center in Parnell Park to enter WHITTIER's collection system via an 8-inch diameter sewer pipe owned by the County of Los Angeles. A small quantity of wastewater from 315 dwelling units within La Habra Heights, Pico Rivera, and La Mirada is also allowed to enter WHITTIER's collection system. These agencies have no agreements with WHITTIER due to the adequate capacity to convey minor flows. However, these agencies must comply with LACSD's discharge prohibitions. WHITTIER owns, operates, and maintains the wastewater collection system that serves the City of Whittier. Wastewater generated in the City of Whittier is collected by trunk sewers owned, operated, and maintained by LACSD, and transported to the Los Coyotes Water Reclamation Plant for treatment.

## V.   STATUTORY AND REGULATORY BACKGROUND

34. CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA §402, 33 U.S.C. §1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations and other regulations promulgated by the EPA and the SWRCB. Sewage is specifically identified in the CWA as a pollutant. The sewer lines and storm water system owned by WHITTIER are point sources under the CWA.

35. The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA §502(7), 33 U.S.C. §1362(7).

//

36. The Administrator of the EPA has authorized the Regional Water Quality Control Board to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA §402, 33 U.S.C. §1342.

37. WHITTIER is not in possession of any NPDES Permit authorizing it to discharge pollutants into navigable waters of the United States within the meaning of the CWA.

38. Code of Federal Regulations Title 40 §122.41 (40 CFR § 122.41) includes conditions or provisions that apply to all NPDES permits. Additional provisions applicable to NPDES permits are found in 40 CFR §122.42. WHITTIER must comply with all provisions. Pursuant to 40 CFR §122.41 any permit non-compliance constitutes a violation of the CWA.

## VI. VIOLATIONS

39. WHITTIER's unpermitted discharges of untreated sewage from its wastewater collection system, as detailed herein and in the CWA NOTICE are violations of CWA §301(a), CWA, 33 U.S.C. §1311(a). The violations are established in RWQCB-LA files for WHITTIER's sewage collection facility as well as in studies conducted by WHITTIER in compliance with orders from regulatory agencies.

40. The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

## VII. CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(A), 33 U.S.C. § 1365(a)(1)(A) Violation of CWA § 301(a), 33 U.S.C. § 1311(a) – Discharge of a Pollutant from a Point Source to a Water of the United States Without Complying with Any Other Section of the Act.**

41. RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 40, including EXHIBIT A as though fully set forth herein.

42. WHITTIER has violated and continues to violate the CWA as evidenced by the discharges of pollutants (raw sewage) from a point source (the sewer lines and storm

water collection system) to waters of the United States in violation of CWA §301(a), CWA, 33 U.S.C. §1311(a).

43. WHITTIER has self-reported and certified under oath as to SSOs reaching a water of the United States, as evidenced in CIWQS and WHITTIER's own records. As listed in CIWQS, the event ID numbers of those violations are identified herein and in the CWA NOTICE.

44. All discharges identified herein are violations of CWA §301(a), 33 U.S.C. §1311(a) in that they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

45. The violations of WHITTIER as set forth herein are ongoing in nature and will continue after the filing of this Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by WHITTIER to the RWQCB-LA. Each of WHITTIER's violations is a separate violation of the CWA.

46. RIVER WATCH avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, WHITTIER will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. RIVER WATCH avers and believes and on such belief alleges that the relief requested in this Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and protect their interests which are or may be adversely affected by WHITTIER's violations of the CWA, as well as other State and Federal standards.

## VIII. RELIEF REQUESTED

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

47. Declare WHITTIER to have violated and to be in violation of the CWA.

//

48. Issue an injunction ordering WHITTIER to immediately operate its sewage collection system in compliance with the CWA.

49. Order WHITTIER to perform remedial measures to correct deficiencies in its management, maintenance, and reporting regarding discharges from its sewage and stormwater collection systems.

50. Order WHITTIER to pay civil penalties of $37,500.00 per violation per day for is violations of the CWA.

51. Order WHITTIER to pay reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

52. For such other and further relief as the court deems just and proper.

DATED: August 21, 2015         LAW OFFICE OF JACK SILVER

                                                    By: _____
                                                        JACK SILVER
                                                        Attorney for Plaintiff
                                                        CALIFORNIA RIVER WATCH

Complaint